The Honorable Robert J. Bryan

```
_____ FILED _____ LODGED
_____ RECEIVED

SEP 1 2 2024

CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT TACOMA
BY                                    DEPUTY
```

### UNITED STATES DISTRICT COURT FOR THE
### WESTERN DISTRICT OF WASHINGTON
### AT TACOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, | NO. CR23-5034-01 RJB |
| Plaintiff, | |
| v. | **PLEA AGREEMENT** |
| FATIU ISMAILA LAWAL, | |
| Defendant. | |

The United States, through United States Attorney Tessa M. Gorman and Assistant United States Attorney Cindy Chang of the Western District of Washington, and Defendant Fatiu Ismaila Lawal and Defendant's attorney Paula T. Olson enter into the following Plea Agreement, pursuant to Federal Rule of Criminal Procedure 11(1)(B).

1.     **The Charges**.  Defendant, having been advised of the right to have this matter tried before a jury, agrees to waive that right and enters a plea of guilty to each of the following charges contained in the Indictment:

       a.     Wire Fraud, as charged in Count 3, in violation of Title 18, United States Code, Section 1343; and

Plea Agreement - 1
*United States v. Lawal*, CR23-5034-01 RJB

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

b.       Aggravated Identity Theft, as charged in Count 16, in violation of Title 18, United States Code, Section 1028A.

By entering pleas of guilty, Defendant hereby waives all objections to the form of the charging document. Defendant further understands that before entering any guilty plea, Defendant will be placed under oath. Any statement given by Defendant under oath may be used by the United States in a prosecution for perjury or false statement.

2.       **Elements of the Offenses**. The elements of the offenses to which Defendant is pleading guilty are as follows:

a.       The elements of Wire Fraud, as charged in Count 3, in violation of Title 18, United States Code, Section 1343, are as follow:

*First*, the defendant knowingly participated in, or devised, a scheme or plan for obtaining money or property through false or fraudulent pretenses, representations or promises;

*Second*, the promises, statements, or representations were material, that is, they had a natural tendency to influence a person to part with money or property;

*Third*, the defendant acted with the intent to defraud;

*Fourth*, the defendant used, or caused to be used, the wires in interstate or foreign commerce to carry out or attempt to carry out an essential part of the scheme; and

*Fifth*, the violation occurred in relation to, or involved, benefit payments authorized, transmitted, disbursed or paid in connection with a presidentially-declared major disaster or emergency.

b.       The elements of Aggravated Identity Theft, as charged in Count 16, in violation of Title 18, United States Code, Section 1028A, are as follow:

*First*, the defendant knowingly transferred, possessed, or used, without legal authority, a means of identification of another person;

*Second*, the defendant knew the means of identification belonged to a real person; and

Plea Agreement - 2
*United States v. Lawal*, CR23-5034-01 RJB

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1    *Third*, the defendant did so during and in relation to the crime of wire fraud.

2    3.    **The Penalties.** Defendant understands that the statutory penalties applicable

3    to the offense(s) to which Defendant is pleading guilty are as follows:

4    a.    For the offense of wire fraud, as charged in Count 3:   A term of

5    imprisonment of up to 30 years, a fine of up to $1,000,000, a period of supervision

6    following release from prison of up to five years, and a mandatory special

7    assessment of 100 dollars.  If a probationary sentence is imposed, the probationary

8    period can be for up to five years.

9    b.    For the offense of aggravated identity theft, as charged in Count 16:

10   A mandatory term of imprisonment of two years, which must be consecutive to any

11   other sentence, a fine of up to $250,000, a period of supervision following release

12   from prison of up to one year, and a mandatory special assessment of 100 dollars.

13   Defendant understands that supervised release is a period of time following

14   imprisonment during which Defendant will be subject to certain restrictive conditions and

15   requirements.  Defendant further understands that, if supervised release is imposed and

16   Defendant violates one or more of the conditions or requirements, Defendant could be

17   returned to prison for all or part of the term of supervised release that was originally

18   imposed.  This could result in Defendant serving a total term of imprisonment greater than

19   the statutory maximum stated above.

20   Defendant understands that as a part of any sentence, in addition to any term of

21   imprisonment and/or fine that is imposed, the Court may order Defendant to pay restitution

22   to any victim of the offense, as required by law.

23   Defendant further understands that the consequences of pleading guilty may include

24   the forfeiture of certain property, either as a part of the sentence imposed by the Court, or

25   as a result of civil judicial or administrative process.

26   Defendant agrees that any monetary penalty the Court imposes, including the

27   special assessment, fine, costs, or restitution, is due and payable immediately and further

Plea Agreement - 3
*United States v. Lawal*, CR23-5034-01 RJB

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  agrees to submit a completed Financial Disclosure Statement as requested by the United

2  States Attorney's Office.

3       Defendant understands that, if pleading guilty to a felony drug offense, Defendant

4  will become ineligible for certain food stamp and Social Security benefits as directed by

5  Title 21, United States Code, Section 862a.

6       4.   **Immigration Consequences**.   Defendant recognizes that pleading guilty

7  may have consequences with respect to Defendant's immigration status if Defendant is not

8  a citizen of the United States.  Under federal law, a broad range of crimes are grounds for

9  removal, and some offenses make removal from the United States presumptively

10 mandatory.  Removal and other immigration consequences are the subject of a separate

11 proceeding, and Defendant understands that no one, including Defendant's attorney and

12 the Court, can predict with certainty the effect of a guilty plea on immigration status.

13 Defendant nevertheless affirms that Defendant wants to plead guilty regardless of any

14 immigration consequences that Defendant's guilty pleas may entail, even if the

15 consequence is Defendant's mandatory removal from the United States.

16      5.   **Rights Waived by Pleading Guilty.**   Defendant understands that by

17 pleading guilty, Defendant knowingly and voluntarily waives the following rights:

18          a.   The right to plead not guilty and to persist in a plea of not guilty;

19          b.   The right to a speedy and public trial before a jury of Defendant's

20 peers;

21          c.   The right to the effective assistance of counsel at trial, including, if

22 Defendant could not afford an attorney, the right to have the Court appoint one for

23 Defendant;

24          d.   The right to be presumed innocent until guilt has been established

25 beyond a reasonable doubt at trial;

26          e.   The right to confront and cross-examine witnesses against Defendant

27 at trial;

Plea Agreement - 4
*United States v. Lawal*, CR23-5034-01 RJB

1    f.    The right to compel or subpoena witnesses to appear on Defendant's

2 behalf at trial;

3    g.    The right to testify or to remain silent at trial, at which trial such

4 silence could not be used against Defendant; and

5    h.    The right to appeal a finding of guilt or any pretrial rulings.

6    6.    **United States Sentencing Guidelines**.    Defendant understands and

7 acknowledges that the Court must consider the sentencing range calculated under the

8 United States Sentencing Guidelines and possible departures under the Sentencing

9 Guidelines together with the other factors set forth in Title 18, United States Code, Section

10 3553(a), including: (1) the nature and circumstances of the offense(s); (2) the history and

11 characteristics of Defendant; (3) the need for the sentence to reflect the seriousness of the

12 offense(s), to promote respect for the law, and to provide just punishment for the offense(s);

13 (4) the need for the sentence to afford adequate deterrence to criminal conduct; (5) the need

14 for the sentence to protect the public from further crimes of Defendant; (6) the need to

15 provide Defendant with educational and vocational training, medical care, or other

16 correctional treatment in the most effective manner; (7) the kinds of sentences available;

17 (8) the need to provide restitution to victims; and (9) the need to avoid unwarranted

18 sentence disparity among defendants involved in similar conduct who have similar records.

19 Accordingly, Defendant understands and acknowledges that:

20    a.    The Court will determine Defendant's Sentencing Guidelines range at

21 the time of sentencing;

22    b.    After consideration of the Sentencing Guidelines and the factors in 18

23 U.S.C. 3553(a), the Court may impose any sentence authorized by law, up to the maximum

24 term authorized by law;

25    c.    The Court is not bound by any recommendation regarding the

26 sentence to be imposed, or by any calculation or estimation of the Sentencing Guidelines

27

Plea Agreement - 5
*United States v. Lawal*, CR23-5034-01 RJB

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  range offered by the parties or the United States Probation Department, or by any
2  stipulations or agreements between the parties in this Plea Agreement; and

3        d.    Defendant may not withdraw a guilty plea solely because of the
4  sentence imposed by the Court.

5        7.    **Ultimate Sentence**.  Defendant acknowledges that no one has promised or
6  guaranteed what sentence the Court will impose.

7        8.    **Statement of Facts**.  Defendant admits Defendant is guilty of the charged
8  offenses.  The parties agree on the following facts, and further agree that all of these facts
9  constitute relevant conduct under the United States Sentencing Guidelines:

10        a.    ***Overview.***  Defendant Fatiu Lawal is a Nigerian national and
11  Canadian resident.  Lawal was the operator of various email accounts, including the
12  accounts with the email addresses gamework393@gmail.com,
13  bankupdtes2014@gmail.com, limapasco@gmail.com, js755642@gmail.com, and
14  js755641@gmail.com. Lawal also operated the domain names and associated email
15  accounts for sensormargin.com, minderpower.com, redfoxdna.com, and unitedgsat.com.

16        b.    Lawal and his co-conspirator, Nigerian national and Canadian
17  resident Sakiru Ambali, obtained the personal identifying information (PII), to include
18  names, dates of birth, and Social Security numbers, of more than 14,700 unwitting
19  Americans. Lawal and Ambali obtained this stolen PII using unlawful means, including
20  through purchases facilitated on Telegram.

21        c.    As discussed below, beginning at the onset of the COVID-19
22  pandemic, Lawal and Ambali used this stolen PII to submit more than 1,700 claims for
23  COVID-19 pandemic unemployment benefits in over 25 states, to submit fraudulent
24  applications for small business assistance, and to submit over 2,300 fraudulent claims for
25  tax refunds.  Lawal personally participated in the submission of over 3,791 fraudulent
26  claims seeking American government funds and caused government agencies to pay at
27  least $1,345,472, primarily from COVID-19 pandemic unemployment benefits.

Plea Agreement - 6
*United States v. Lawal*, CR23-5034-01 RJB

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

   d. ***Pandemic Unemployment Benefit Claims.*** On March 27, 2020, the United States enacted into law the Coronavirus Aid, Relief, and Economic Security (CARES) Act. The CARES Act authorized approximately $2 trillion in aid to American workers, families, and businesses to mitigate the economic consequences of the COVID-19 pandemic. The CARES Act funded and authorized each state to administer new unemployment benefits. These benefits included: (1) Federal Pandemic Unemployment Compensation, which provided a benefit of $600 per week per unemployed worker in addition to existing benefits; (2) Pandemic Unemployment Assistance, which extended benefits to self-employed persons, independent contractors, and others; and (3) Pandemic Emergency Unemployment Assistance, which extended benefits for an additional 13 weeks after regular unemployment benefits were exhausted.

   e. CARES Act unemployment benefits were funded by the United States government through the Department of Labor and administered at the state level by state agencies known as state workforce agencies (SWAs). The Washington Employment Security Department (ESD) is the SWA for the State of Washington.

   f. CARES Act unemployment benefits were authorized, transferred, disbursed and paid in connection with a nationwide emergency declared by Presidential Proclamation 9994 (effective as of March 1, 2020) and a Presidential declaration of a major disaster for the State of Washington concerning the COVID-19 pandemic that was issued on March 22, 2020. On August 8, 2020, to further assist American workers suffering from the economic impacts of the COVID-19 pandemic, the President authorized the Federal Emergency Management Agency to expend up to $44 billion from disaster relief funds for the Lost Wage Assistance Program (LWAP) to provide an additional $300 per week to workers who were unemployed because of COVID-19.

   g. SWAs allow applicants to apply online for state-administered unemployment benefits. For example, in Washington, applicants can apply online for ESD-administered benefits by visiting ESD's Unemployment Tax and Benefit (UTAB)

1   system via an online portal called eServices.  To access eServices, the applicant must first

2   set up an account with the state's SecureAccess Washington (SAW) web-based identity

3   validation system.

4           h.   ***Defendant's   Fraudulent   Pandemic   Unemployment   Claims.***

5   Beginning in or about March 2020, and continuing until at least December 2021, Lawal

6   accessed ESD's UTAB and SAW websites, as well as the online application platforms for

7   other SWAs.  Lawal then submitted at least 790 claims for pandemic unemployment

8   benefits using the stolen PII of at least 790 American workers.  These fraudulent claims

9   caused SWAs to pay over $1.3 million in pandemic unemployment benefits, including

10  funds   from   LWAP.   Lawal   personally   used   the   gamework393@gmail.com,

11  bankupdates2014@gmail.com, and other email accounts to activate the claims.  To prevent

12  the SWAs from recognizing that a single email account was being used to submit multiple

13  claims, Lawal inserted periods at various places in the Gmail addresses.  Lawal also used

14  hundreds of unique email addresses associated with sensormargin.com, a domain he

15  controlled.

16          i.   As one example of this conduct, as charged in Count 3, on about May

17  7, 2020, Lawal activated a claim using the email address g.a.mewor.k.3.9.3@gmail.com,

18  which caused Washington State to send an email via interstate wire transfer from Olympia,

19  Washington, to a Google server outside Washington State.  Similarly, as charged in Count

20  16, Lawal, without lawful authority, submitted a fraudulent claim using the PII, to include

21  name, Social Security number, and date of birth, of a person with the initials T.G., a

22  Washington resident whom Lawal knew to be a real person.

23          j.   When completing the applications for pandemic unemployment

24  benefits, Lawal, Ambali, and their co-conspirators directed some of the benefits be paid to

25  online payment accounts, including accounts administered by MovoCash, Inc.  Lawal,

26  Ambali, and their co-conspirators also directed fraudulent benefits to be loaded onto debit

27  cards issued by banks and mailed to addresses in the United States or deposited into bank

Plea Agreement - 8
*United States v. Lawal*, CR23-5034-01 RJB

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  accounts controlled by persons known as "money mules," who withdrew and transferred

2  the funds according to instructions given by Lawal, Ambali, and their co-conspirators.

3  Lawal personally obtained a significant amount of proceeds from the fraud scheme

4  employing these fraudulent applications.

5          k.  ***Fraudulent Economic Injury Disaster Loan Applications.***  The

6  CARES Act also authorized the Small Business Administration to provide forgivable loans

7  known as Economic Injury Disaster Loans (EIDLs) of up to $2 million to eligible small

8  businesses experiencing substantial financial disruption due to the COVID-19 pandemic.

9  Qualifying businesses applying for an EIDL must submit an application to the SBA and

10  provide information about its operations, such as the number of employees, gross revenues

11  for the 12-month period preceding the disaster, and cost of goods sold in the 12-month

12  period preceding the disaster.  The applicant must also certify that all of the information in

13  the application is true and correct to the best of the applicant's knowledge.

14          l.  Between about August 11, 2020 and October 6, 2021, Lawal and

15  Ambali submitted at least 38 fraudulent EIDL applications.  The SBA denied all but one

16  application, which resulted a payment of $2,500.

17          m.  ***Fraudulent Tax Refund Claims.***  Lawal also used American

18  taxpayers' stolen PII to submit fraudulent claims for refunds from the Internal Revenue

19  Service without the taxpayers' knowledge.  Between 2018 and November 2022, Lawal,

20  using    the    gamework393@gmail.com,    bankupdates2014@gmail.com,

21  js8979767@gmail.com,   and   other   accounts   including   those   from   domain   names

22  sensormargin.com,  redfoxdna.com,  minderpower.com,  and  unitedgsat.com,  submitted

23  over 3,000 fraudulent tax returns seeking refunds totaling over $7.5 million. The IRS paid

24  three of the returns, resulting in refunds totaling approximately $30,000.

25          n.  ***Use of Telegram.***  Lawal, Ambali, and their co-conspirators used

26  Telegram and other encrypted messaging services to instruct one another how to obtain

27  and use stolen PII to fraudulently obtain United States government funds.  Telegram is an

Plea Agreement - 9
*United States v. Lawal*, CR23-5034-01 RJB

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1   encrypted, cloud-based, centralized instant messaging system that is accessible from
2   electronic devices such as smartphones, tablets, and computers. Its features include a
3   channel function that allows an administrator to post to a public or private feed that
4   broadcasts to an unlimited number of subscribers.

5           o.      Lawal, Ambali, and their co-conspirators used at least one Telegram
6   channel that instructed its subscribers how to: purchase stolen PII from the channel
7   administrator or use tools that scrape the internet for PII; submit fraudulent unemployment
8   benefit claims to various SWAs across the nation, including ESD; and mask IP addresses
9   to evade detection. The channel also provided tutorials on how to use stolen PII to defraud
10  other COVID-19 benefit programs such as the SBA's EIDL program and the Treasury's
11  Emergency Rental Assistance Program.

12          p.      Through the foregoing conduct, Lawal, with intent to defraud,
13  knowingly devised and participated in a scheme to obtain money and property by means
14  of materially false or fraudulent pretenses and representations, and used interstate wire
15  communication to carry out the scheme. Defendant engaged in these fraudulent activities
16  from outside of the United States. During and in relation to this scheme, Lawal knowingly
17  possessed and used, without legal authority, means of identification of persons whom
18  Lawal knew to be real people.

19          The parties agree that the Court may consider additional facts contained in the
20  Presentence Report (subject to standard objections by the parties) and/or that may be
21  presented by the United States or Defendant at the time of sentencing, and that the factual
22  statement contained herein is not intended to limit the facts that the parties may present to
23  the Court at the time of sentencing.

24          9.      **Sentencing Factors**. The parties agree that the following Sentencing
25  Guidelines provisions apply to this case:

26          The following provisions apply to defendant's conviction on Count 5: 

27          a.      A base offense level of 7, pursuant to USSG § 2B1.1(a)(1);

Plea Agreement - 10
*United States v. Lawal*, CR23-5034-01 RJB

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

b.     An increase of 14 points because the loss from the offense exceeded $550,000 but was less than $1,500,000, pursuant to USSG § 2B1.1(b)(1)(H);

c.     An increase of two points because the offense involved 10 or more victims, pursuant to USSG § 2B1.1(b)(2)(A);

d.     An increase of two points because the offense involved sophisticated means and a substantial part of the offense was committed from outside the United States, pursuant to USSG § 2B1.1(b)(10); and

e.     An increase of two points because the offense involved benefits authorized under a presidentially-declared major disaster or emergency, pursuant to USSG § 2B1.1(b)(12).

The Guideline sentence for defendant's conviction on Count 16 is a period of imprisonment of 24 months, pursuant to USSG § 2B1.6 and 18 U.S.C. § 1028A.

The parties agree they are free to present arguments regarding the applicability of all other provisions of the United States Sentencing Guidelines. Defendant understands, however, that at the time of sentencing, the Court is free to reject these stipulated adjustments, and is further free to apply additional downward or upward adjustments in determining Defendant's Sentencing Guidelines range.

10.    **Zero Point Offender.** Based on the evidence known to the United States at the time of this Plea Agreement, the United States believes Defendant may be eligible for a sentencing adjustment pursuant to the Zero Point Offender provisions at USSG § 4C1.1(a)(1)-(10). Those provisions require: (1) the defendant did not receive any criminal history points; (2) the defendant did not receive an adjustment under §3A1.4 (Terrorism); (3) the defendant did not use violence or credible threats of violence in connection with the offense; (4) the offense did not result in death or serious bodily injury; (5) the instant offense of conviction is not a sex offense; (6) the defendant did not personally cause substantial financial hardship; (7) the defendant did not possess, receive, purchase, transport, transfer, sell, or otherwise dispose of a firearm or other dangerous weapon (or

Plea Agreement - 11
*United States v. Lawal*, CR23-5034-01 RJB

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1    induce another participant to do so) in connection with the offense; (8) the instant offense

2    of conviction is not covered by §2H1.1 (Offenses Involving Individual Rights); (9) the

3    defendant did not receive an adjustment under §3A1.1 (Hate Crime Motivation or

4    Vulnerable Victim) or §3A1.5 (Serious Human Rights Offense); and (10) the defendant

5    did not receive an adjustment under §3B1.1 (Aggravating Role) and was not engaged in a

6    continuing criminal enterprise, as defined in 21 U.S.C. § 848.

7         If, at the time of sentencing, the United States is satisfied Defendant has met each

8    of these ten requirements, the United States will recommend a Zero Point Offender

9    adjustment to Defendant's sentencing range pursuant to USSG § 4C1.1(a). Defendant

10   understands, however, that the Court will ultimately decide whether Defendant qualifies

11   for any sentencing adjustment that comports with the Zero Point Offender provisions.

12        11.   **Acceptance of Responsibility.**   At sentencing, *if* the Court concludes

13   Defendant qualifies for a downward adjustment for acceptance of responsibility pursuant

14   to USSG § 3E1.1(a) and Defendant's offense level is 16 or greater, the United States will

15   make the motion necessary to permit the Court to decrease the total offense level by three

16   (3) levels pursuant to USSG §§ 3E1.1(a) and (b), because Defendant has assisted the United

17   States by timely notifying the United States of Defendant's intention to plead guilty,

18   thereby permitting the United States to avoid preparing for trial and permitting the Court

19   to allocate its resources efficiently.

20        12.   **Recommendation Regarding Imprisonment**.   Pursuant to Federal Rule of

21   Criminal Procedure 11(c)(1)(B), the government agrees to recommend that the appropriate

22   term of imprisonment to be imposed by the Court at the time of sentencing is a term of no

23   more than 41 months for Count 3 and a term of 24 months for Count 16, which shall run

24   consecutive to the sentence for Count 3.   Defendant understands that this is a below-

25   Guidelines sentencing recommendation.   Defendant is free to recommend any sentence.

26   Defendant understands that this recommendation is not binding on the Court and the Court

27   may reject the recommendation of the parties and may impose any term of imprisonment

Plea Agreement - 12
*United States v. Lawal*, CR23-5034-01 RJB

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1   up to the statutory maximum penalty authorized by law.   Defendant further understands

2   that Defendant cannot withdraw a guilty plea simply because of the sentence imposed by

3   the Court.   Except as otherwise provided in this Plea Agreement, the parties are free to

4   present arguments regarding any other aspect of sentencing.

5       13.   **Restitution.**  Defendant shall make restitution in the amount of $1,345,472,

6   to the U.S. Department of Labor and Internal Revenue Service, as specified in the

7   judgment, with credit for any amounts already paid.

8           a.     The full amount of restitution shall be due and payable immediately

9   on entry of judgment and shall be paid as quickly as possible.  If the Court finds that the

10  defendant is unable to make immediate restitution in full and sets a payment schedule as

11  contemplated in 18 U.S.C. § 3664(f), Defendant agrees that the Court's schedule represents

12  a minimum payment obligation and does not preclude the U.S. Attorney's Office from

13  pursuing any other means by which to satisfy the defendant's full and immediately-

14  enforceable financial obligation, including, but not limited to, by pursuing assets that come

15  to light only after the district court finds that the defendant is unable to make immediate

16  restitution.

17          b.     Defendant agrees to disclose all assets in which Defendant has any

18  interest or over which Defendant exercises control, directly or indirectly, including those

19  held by a spouse, nominee, or third party.  Defendant agrees to cooperate fully with the

20  United States' investigation identifying all property in which Defendant has an interest and

21  with the United States' lawful efforts to enforce prompt payment of the financial

22  obligations to be imposed in connection with this prosecution.  Defendant's cooperation

23  obligations are:  (1) before sentencing, and no more than 30 days after executing this Plea

24  Agreement, truthfully and completely executing a Financial Disclosure Statement provided

25  by the United States Attorney's Office and signed under penalty of perjury regarding

26  Defendant's and Defendant's spouse's financial circumstances and producing supporting

27  documentation, including  tax returns, as requested; (2) providing updates with any

Plea Agreement - 13
*United States v. Lawal*, CR23-5034-01 RJB

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  material changes in circumstances, as described in 18 U.S.C. § 3664(k), within seven days

2  of the event giving rise to the changed circumstances; (3) authorizing the United States

3  Attorney's Office to obtain Defendant's credit report before sentencing; (4) providing

4  waivers, consents or releases requested by the U.S. Attorney's Office to access records to

5  verify the financial information; (5) authorizing the U.S. Attorney's Office to inspect and

6  copy all financial documents and information held by the U.S. Probation Office; (6)

7  submitting to an interview regarding Defendant's Financial Statement and supporting

8  documents before sentencing (if requested by the United States Attorney's Office), and

9  fully and truthfully answering questions during such interview; and (7) notifying the United

10 States Attorney's Office before transferring any interest in property owned directly or

11 indirectly by Defendant, including any interest held or owned in any other name, including

12 all forms of business entities and trusts.

13          c.      The parties acknowledge that voluntary payment of restitution prior

14 to the adjudication of guilt is a factor the Court considers in determining whether Defendant

15 qualifies for acceptance of responsibility pursuant to USSG § 3E1.1(a).

16          14.    **Forfeiture of Assets**.  Defendant agrees to forfeit to the United States

17 immediately Defendant's right, title, and interest in any and all property, real or personal,

18 that constitutes or is derived from proceeds traceable to the offense of wire fraud, as

19 charged in Count 3 of the Indictment.  All such property is forfeitable pursuant to Title 18,

20 United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section

21 2461(c), and includes but is not limited to a judgment for a sum of money reflecting the

22 proceeds Defendant personally obtained as a result of the offense.

23          Defendant understands and acknowledges that any property forfeited will be

24 separate and distinct from any restitution that is ordered in this case.  Defendant further

25 understands and acknowledges to request restoration, the United States Attorney's Office

26 (the "USAO") must send a request to the Money Laundering and Asset Recovery Section

27 ("MLARS") of the Department of Justice, that includes the representations outlined in the

Plea Agreement - 14
*United States v. Lawal*, CR23-5034-01 RJB

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1   Asset Forfeiture Policy Manual (2023), Chapter 14, Sec. II.B. and 28 C.F.R. Part 9.8,

2   which are summarized as follows: (i) all known victims have been properly notified of

3   the restitution proceedings and are properly accounted for in the restitution order; (ii) to

4   the best of the USAO's knowledge and belief after consultation with the seizing agency,

5   the losses described in the restitution order have been verified, comport with the

6   remission requirements, and reflect all sources of compensation received by the victims,

7   including returns on investments, interest payments, insurance proceeds, refunds,

8   settlement payments, lawsuit awards, and any other sources of compensation for their

9   losses; (iii) to the best of the USAO's knowledge and belief after consultation with the

10  seizing agency, reasonable efforts to locate additional assets establish that the victims do

11  not have recourse reasonably available to obtain compensation for their losses from other

12  assets, including those owned or controlled by the defendant(s); and (iv) there is no

13  evidence to suggest that any of the victims knowingly contributed to, participated in,

14  benefitted from, or acted in a willfully blind manner, toward the commission of the

15  offenses underlying the forfeiture or a related offense. The USAO agrees that if it can

16  make these required representations, then the USAO will submit a restoration request to

17  MLARS, seeking approval for any assets forfeited to be restored to the victims in this

18  case, which may, in turn, satisfy in full or part any restitution order. Defendant further

19  understands and acknowledges that the Attorney General, or his/her designee, has the

20  sole discretion to approve or deny the restoration request. The United States also agrees

21  that the amount Defendant pays toward restitution will be credited against this forfeited

22  sum.

23       The United States reserves its right to proceed against any remaining property not

24  identified in this Plea Agreement, including any property in which the Defendant has any

25  interest or control, if that property constitutes or is traceable to proceeds of his commission

26  of the wire-fraud scheme described above.

27

Plea Agreement - 15
*United States v. Lawal*, CR23-5034-01 RJB

15.    **Abandonment of Contraband**.  Defendant also agrees that, if any federal law enforcement agency seized any illegal contraband that was in Defendant's direct or indirect control, Defendant consents to the federal administrative disposition, official use, and/or destruction of that contraband.

16.    **Non-Prosecution of Additional Offenses**.  As part of this Plea Agreement, the United States Attorney's Office for the Western District of Washington agrees not to prosecute Defendant for any additional offenses known to it as of the time of this Plea Agreement based upon evidence in its possession at this time, and that arise out of the conduct giving rise to this investigation, and moves to dismiss the remaining counts in the Indictment at the time of sentencing.  In this regard, Defendant recognizes the United States has agreed not to prosecute all of the criminal charges the evidence establishes were committed by Defendant solely because of the promises made by Defendant in this Plea Agreement.  Defendant agrees, however, that for purposes of preparing the Presentence Report, the United States Attorney's Office will provide the United States Probation Office with evidence of all conduct committed by Defendant.

Defendant agrees that any charges to be dismissed before or at the time of sentencing were substantially justified in light of the evidence available to the United States, were not vexatious, frivolous or taken in bad faith, and do not provide Defendant with a basis for any future claims under the "Hyde Amendment," Pub. L. No. 105-119 (1997).

17.    **Breach, Waiver, and Post-Plea Conduct**.  Defendant agrees that, if Defendant breaches this Plea Agreement: (a) the United States may withdraw from this Plea Agreement and Defendant may be prosecuted for all offenses for which the United States has evidence; (b) Defendant will not oppose any steps taken by the United States to nullify this Plea Agreement, including the filing of a motion to withdraw from the Plea Agreement; and (c) Defendant waives any objection to the re-institution of any charges that previously were dismissed or any additional charges that had not been prosecuted.

Plea Agreement - 16
*United States v. Lawal*, CR23-5034-01 RJB

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1    Defendant further understands that if, after the date of this Plea Agreement,

2  Defendant should engage in illegal conduct, or conduct that violates any conditions of

3  release or the conditions of confinement (examples of which include, but are not limited

4  to, obstruction of justice, failure to appear for a court proceeding, criminal conduct while

5  pending sentencing, and false statements to law enforcement agents, the Pretrial Services

6  Officer, Probation Officer, or Court), the United States is free under this Plea Agreement

7  to file additional charges against Defendant or to seek a sentence that takes such conduct

8  into consideration by requesting the Court to apply additional adjustments or enhancements

9  in its Sentencing Guidelines calculations in order to increase the applicable advisory

10  Guidelines range, and/or by seeking an upward departure or variance from the calculated

11  advisory Guidelines range.  Under these circumstances, the United States is free to seek

12  such adjustments, enhancements, departures, and/or variances even if otherwise precluded

13  by the terms of the Plea Agreement.

14    18.    **Waiver of Appellate Rights and Rights to Collateral Attacks.**  Defendant

15  acknowledges that, by entering the guilty pleas required by this Plea Agreement, Defendant

16  waives all rights to appeal from Defendant's conviction, and any pretrial rulings of the

17  Court, and any rulings of the Court made prior to entry of the judgment of conviction.

18  Defendant further agrees that, provided the Court imposes a custodial sentence that is

19  within or below the Sentencing Guidelines range (or the statutory mandatory minimum, if

20  greater than the Guidelines range) as determined by the Court at the time of sentencing,

21  Defendant waives to the full extent of the law:

22    a.    Any right conferred by Title 18, United States Code, Section 3742, to

23  challenge, on direct appeal, the sentence imposed by the Court, including any fine,

24  restitution order, probation or supervised release conditions, or forfeiture order (if

25  applicable); and

26

27

Plea Agreement - 17
*United States v. Lawal*, CR23-5034-01 RJB

b.   Any right to bring a collateral attack against the conviction and sentence, including any restitution order imposed, except as it may relate to the effectiveness of legal representation.

This waiver does not preclude Defendant from bringing an appropriate motion pursuant to 28 U.S.C. § 2241, to address the conditions of Defendant's confinement or the decisions of the Bureau of Prisons regarding the execution of Defendant's sentence.

If Defendant breaches this Plea Agreement at any time by appealing or collaterally attacking (except as to effectiveness of legal representation) the conviction or sentence in any way, the United States may prosecute Defendant for any counts, including those with mandatory minimum sentences, that were dismissed or not charged pursuant to this Plea Agreement.

19.   **Voluntariness of Plea**.  Defendant agrees that Defendant has entered into this Plea Agreement freely and voluntarily, and that no threats or promises were made to induce Defendant to enter a plea of guilty other than the promises contained in this Plea Agreement or set forth on the record at the change of plea hearing in this matter.

20.   **Statute of Limitations**.  In the event this Plea Agreement is not accepted by the Court for any reason, or Defendant breaches any of the terms of this Plea Agreement, the statute of limitations shall be deemed to have been tolled from the date of the Plea Agreement to:  (1) thirty (30) days following the date of non-acceptance of the Plea Agreement by the Court; or (2) thirty (30) days following the date on which a breach of the Plea Agreement by Defendant is discovered by the United States Attorney's Office.

21.   **Completeness of Plea Agreement**.  The United States and Defendant acknowledge that these terms constitute the entire Plea Agreement between the parties, except as may be set forth on the record at the change of plea hearing in this matter.  This Plea Agreement binds only the United States Attorney's Office for the Western District of

//

Plea Agreement - 18
*United States v. Lawal*, CR23-5034-01 RJB

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  Washington.  It does not bind any other United States Attorney's Office or any other office

2  or agency of the United States, or any state or local prosecutor.

3      Dated this 12th day of September, 2024.

4

5  _____
   FATIU ISMAILA LAWAL
6  Defendant

7

8  _____
   PAULA T. OLSON
9  Attorney for Defendant

10

11 _____
   CINDY CHANG
12 Assistant United States Attorney

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

Plea Agreement - 19
*United States v. Lawal*, CR23-5034-01 RJB

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970